UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| NORMAN KOLSTAD and SUSAN KOLSTAD,<br><br>            Plaintiffs,<br><br>    v.<br><br>COUNTY OF AMADOR, MARTHA SHERWIN, and DOES 1 through 50, inclusive,<br><br>            Defendants. | NO. CIV 2:13-01279 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

    Plaintiffs Norman Kolstad and Susan Kolstad brought this action against the County of Amador (the "County") and Martha Shaver (erroneously named in the Complaint as Martha "Sherwin") arising from a dispute over plaintiffs' use of their land. Defendants now move to dismiss plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

1

I.   Factual and Procedural Background

Plaintiffs live in a converted mobile home and trailer on forty-three acres of secluded property outside of Ione, Amador County.  (Compl. ¶ 1 (Docket No. 1).)  Plaintiffs contend that, sometime in or around August 2012, Sherwin, a neighbor, complained to the County regarding plaintiffs' use of their land following an undisclosed incident with one of Sherwin's rental tenants.  (Id. ¶ 17.)  According to plaintiffs, Sherwin is "very well connected to powerful, influential individuals within" the County government.  (Id. ¶ 5.)  Around this time, plaintiffs allege Sherwin and County officials began to intrude on plaintiffs' property to document supposed county code violations.  (Id.  ¶ 18.)

On August 15, 2012, County Code Enforcement Officer Linda Van Vleck conducted an inspection of plaintiffs' property after receiving complaints of an unpermitted structure and sewage disposal system.  (Id. ¶ 21.)  On September 6, 2012, Van Vleck mailed a follow-up letter to plaintiffs detailing "several code violations" on plaintiffs' property including: an unpermitted mobile home and sewage disposal system; unpermitted occupied recreational travel trailers; four structures built without building permits; excessive outdoor marijuana cultivation; an unpermitted septic system; and accumulation of junk exceeding 200 square feet.  (Id. Ex. B.)

Plaintiffs contend they never knowingly "violated any laws, ordinances, or regulations in Amador County or in the State of California," (Compl. ¶ 3), and that other neighbors, including Sherwin, have engaged in similar conduct without being subject to

enforcement action by the County.  (Id. ¶¶ 6, 27.)

After receiving the September letter, plaintiffs retained counsel and met with County officials in an effort to settle the dispute.  (Id. ¶¶ 27-29.)  On February 20, 2013, plaintiffs' counsel sent a letter to County Health Director Michael Israel seeking to memorialize an alleged agreement to end the dispute, reached when Israel visited plaintiffs' property earlier that month.  (Id. Ex. C.)  In response, however, Van Vleck mailed plaintiffs a letter on March 25, 2013, informing plaintiffs that the County would not sign the agreement.  (Id. Ex. D.)  Van Vleck's mailing also included letters from various County officials detailing the code violations on plaintiffs' property and threatening enforcement of the code provisions if plaintiffs did not remedy them.  (Id.)  The letters warned that any violations remaining unresolved after ninety days would result in recording the violations on plaintiffs' title, which plaintiffs allege would "effectively render [their] property worthless and ultimately force them to move from it."  (Id. ¶ 39.)

Plaintiffs contend this response constituted an "unwarranted paper assault" that was "undeniably retaliatory in nature," "intended to be an attack," and "punishment for Plaintiffs having retained counsel to advance their legitimate complaints."  (Id. ¶¶ 39-41.)  Although the letters included deadlines for compliance, (id. Ex. D), plaintiffs do not allege that defendants followed through with the threatened actions or took any further action after sending the March 2013 letters.

Plaintiffs assert two claims under 42 U.S.C. § 1983

3

against the County: a First Amendment retaliation claim and a Fourteenth Amendment class of one equal protection claim.[1] (Compl. ¶¶ 43-47.)  Plaintiffs also bring a claim under 42 U.S.C. § 1985(3) against the County and Sherwin based on a conspiracy to violate plaintiffs' First and Fourteenth Amendment rights.  (Id. ¶¶ 48-52.)  Defendants now move to dismiss the Complaint as unripe under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

II.  Defendants' Rule 12(b)(1) Motion

Defendants first move to dismiss plaintiffs' claims as unripe under Rule 12(b)(1).  "When subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  Tosco Corp. v. Comtys. for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001), abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010).

"[R]ipeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993).  A claim is not ripe "if it involves contingent future events that may not occur as anticipated, or indeed may not occur at all."  Id. (quoting Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580–81 (1985)).

---

[1] Because defendants do not raise the issue, the court assumes that plaintiffs have sufficiently pled a claim against the County for municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), for the purposes of this motion to dismiss.

4

"In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action." Herrington v. County of Sonoma, 857 F.2d 567, 568 (9th Cir. 1988). A constitutional challenge to land use regulations is not ripe until there has been "a final decision by the government which inflicts a concrete harm upon the plaintiff landowner." Id. at 569. This final decision requirement aims to "provide [plaintiffs] with relief without expending further court resources" and "enable [the court] to respect principles of federalism which counsel in favor of resolving land disputes locally." Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957, 979 (9th Cir. 2011). The Ninth Circuit treats the ripeness requirement in land use contexts "as a matter of both Article III and prudential concern." Id. at 980.

The final decision ripeness requirement does not apply to all land use claims. The Supreme Court first applied the requirement to regulatory takings claims, Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 190 (1985), and the Ninth Circuit has since extended the requirement to other types of land use claims. See, e.g., Guatay, 670 F.3d at 987 (Religious Land Use and Institutionalized Persons Act); Traweek v. City & County of San Francisco, 920 F.2d 589, 593-94 (9th Cir. 1990) (substantive due process, equal protection, and procedural due process). Thus, the court must first determine whether the final decision requirement applies to plaintiffs' claims here.

Whether the final decision ripeness requirement applies to First Amendment and equal protection claims in the land use context depends on whether such claims allege injuries "separate

5

from any purported taking." Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 831 (9th Cir. 2003).[2]  In Carpinteria, the court found the plaintiff's First Amendment retaliation and equal protection claims ripe despite no final administrative action because the plaintiff sought damages from the process of obtaining development permits, rather than injuries to the underlying value of the plaintiff's property. Id.  The plaintiff alleged he had been denied the full use of his property for nine years while permits were pending, during which time the defendant county withdrew final approval of a permit in response to pressure from community members and required the plaintiff to withdraw his appeal of that denial. Id.  The plaintiff also had to incur direct financial injury and pay fees to cover the cost of the county's investigation of the alleged violations on his property. Id.

In contrast, the Ninth Circuit has required a final administrative decision in cases alleging equal protection violations alongside takings or regulatory takings, where the value of the property is at stake. See Norco Const., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir. 1986) ("[T]he general rule is that claims for inverse taking, and for alleged related injuries from denial of equal protection or denial of due process . . . are not matured claims until planning authorities and state

---

[2] Whether the final decision requirement applies to First Amendment claims in the land use context at all is an "open question" in the Ninth Circuit. Guatay, 670 F.3d at 987. However, because the Ninth Circuit treated First Amendment and equal protection claims identically for the purposes of its ripeness analysis in Carpinteria, 344 F.3d at 831, the court will do the same here.

review entities make a final determination on the status of the property.").

Here, unlike Carpinteria, plaintiffs do not allege that they have been forced to pay any fees or costs nor do they allege that defendants denied or unreasonably delayed any permit applications.  Instead, they seek damages for "diminution of property value," (Compl. ¶ 46), allege that defendants aim to "ultimately 'red tag' [their] homes and boot them from their land," (id. ¶ 30), and claim that the threatened recordation of the code violations on plaintiffs' title would "effectively render [their] property worthless and ultimately force them to move from it," (id. ¶ 39).  Although plaintiffs do not assert a takings claim, the crux of their Complaint is the recordation and its effect on the value of plaintiffs' property--injuries that closely resemble those alleged in takings claims, as opposed to injuries alleged from the process of obtaining permits, as in Carpinteria.  344 F.3d at 831.  Plaintiffs' claims thus are not "separate from any purported taking" and do not fit the "certain limited and appropriate circumstances" when § 1983 claims concerning land use may proceed absent a final determination.  Id.

Plaintiffs therefore must allege "a final decision by the government which inflicts a concrete harm upon the plaintiff landowner."  Herrington, 857 F.2d at 569.  Based on plaintiffs' allegations, such a final decision has not occurred.  For example, plaintiffs do not allege that the County has recorded

7

any violation against plaintiffs' title.[3]  Plaintiffs allege that they submitted numerous Amador County Building Department "Agricultural Building Exemption Application" forms, but do not state whether these applications were accepted or rejected.  (Id. ¶ 32.)  Plaintiffs also attach numerous letters from the County in March 2013 regarding potential referral of the code violations to the County Code Enforcement Officer, but do not describe if and how such enforcement has taken place.  (See id. Ex. D.) There would be no way, at this point, for the court to award any damages for the alleged diminution of property value from the County's code enforcement until the County has made a final decision to do so, as "it is generally impossible to determine the extent of the infringement absent a final determination by the relevant governmental body."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1404-05 (9th Cir. 1989), overruled on other grounds by Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996).  Plaintiffs thus do not allege that County officials have made "a final determination on the status of the property."  Norco, 801 F.2d at 1145.

Because plaintiffs do not allege injuries "separate from any purported taking," Carpinteria, 344 F.3d at 831, and do

---

[3]   A court may consider evidence outside the Complaint to evaluate a challenge for lack of ripeness.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  According to documents plaintiffs attached to the Complaint, recordation was to take place on June 24, 2013. (Id. Ex. D.)  Plaintiffs filed the Complaint on June 26, 2013.  At oral argument, plaintiffs' counsel said both that he did not know if anything had been recorded and that he assumed that "something" had been recorded. Plaintiffs have not sought to amend their Complaint to allege that any recordation has occurred.

not allege the County has made a final determination regarding the use of plaintiffs' property, plaintiffs' claims are not ripe. Accordingly, the court will grant defendants' motion to dismiss for lack of subject matter jurisdiction.[4]

III. Defendants' Rule 12(b)(6) Motion

For the reasons discussed below, even if ripeness did not bar plaintiffs' claims, plaintiffs do not state a claim upon which relief can be granted.

A. Legal Standard

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

B. First Amendment Retaliation

---

[4] Because plaintiffs' § 1985 conspiracy claim relies on the same alleged violations found not to be ripe for purposes of § 1983, the court also finds that the § 1985 claim is not ripe for review. See Homefront Org., Inc. v. Motz, 570 F. Supp. 2d 398, 410 n.9 (E.D.N.Y. 2008).

"The First Amendment forbids government officials from retaliating against individuals for speaking out." Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010). In order to state a First Amendment retaliation claim under § 1983, a plaintiff must allege facts showing: (1) the plaintiff engaged in constitutionally protected activity; (2) as a result, the defendant subjected the plaintiff to adverse action that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) a substantial causal relationship existed between the plaintiff's constitutionally protected activity and the defendant's adverse action. Id.

### 1. Constitutionally Protected Activity

Defendants first contend that plaintiffs did not engage in any protected activity. The Ninth Circuit has recognized that the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." Mothershed v. Justices of Supreme Court, 410 F.3d 602, 611 (9th Cir. 2005) (internal citations and quotations omitted). Although plaintiffs have not filed a formal grievance with the County, plaintiffs allege that defendants acted in retaliation for plaintiffs' many complaints to the County regarding code enforcement and in particular for plaintiffs' retaining counsel to advance those complaints. (Compl. ¶¶ 39, 41.) To the extent plaintiffs allege that defendants retaliated in response to plaintiffs' hiring of an attorney to advance their complaints, therefore, plaintiffs sufficiently allege the element of constitutionally protected activity.

### 2. Adverse Action

Defendants next contend that plaintiffs fail to allege conduct amounting to an "adverse action that would chill a person from continuing to engage in the protected activity." Blair, 608 F.3d at 543. In order to satisfy this element, plaintiffs must allege action "reasonably likely to deter plaintiffs from engaging in speech protected under the First Amendment." Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (internal quotation marks omitted). Courts find such conduct when plaintiffs allege "the loss of a valuable governmental benefit or privilege," Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998) (quoting Hyland v. Wonder, 972 F.2d 1129, 1136 (9th Cir. 2002)), or that defendants engaged in "campaigns of harassment," Coszalter, 320 F.3d at 975, or "other means of coercion, persuasion, and intimidation." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000). "Mere threats and harsh words are insufficient" to support a retaliation claim. Nunez, 147 F.3d at 875.

Plaintiffs claim that, after plaintiffs' counsel sought to memorialize the alleged agreement with County Health Director Israel, defendants responded by repudiating the agreement and advancing an "unwarranted paper assault." (Compl. ¶ 39.) But the County's correspondence, which plaintiffs attached to the Complaint,[5] notifies plaintiffs only that the County would not

---

[5] Although a court may not ordinarily consider material other than the facts alleged the complaint when deciding a motion to dismiss, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996), the court may consider these letters as documents attached to the Complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials--documents attached to the complaint, documents

sign plaintiffs' letter, details plaintiffs' alleged code violations and how to remedy the violations, and warns of action by the County Code Enforcement department if the violations are not rectified.  (See id. Ex. D.)  In contrast, the plaintiffs in Coszalter alleged defendants subjected them to, among other things, disciplinary investigations, reprimands, a criminal investigation, repeated and ongoing verbal harassment and humiliation, and suspensions from work.  320 F.3d at 976-77.  Even accepting plaintiffs' allegations as true, the "unwarranted paper assault," (Compl. ¶ 39), does not rise to the level of a "campaign[] of harassment."  Coszalter, 320 F.3d at 977.  Defendants' conduct as alleged amounts only to "threats and harsh words," Nunez, 147 F.3d at 875, which do not support a retaliation claim.

### 3. Substantial Causal Relationship

Moreover, plaintiffs also fail to allege a causal connection between the adverse action and the protected activity.  A plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'"  Lacey v. Maricopa County, 693 F.3d 896, 917 (9th Cir. 2012) (quoting Hartman v. Moore, 547 U.S. 250, 260 (2006)).  "[A]ction colored by some degree of bad motive does not amount to a constitutional

---

incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment.").
     Further, the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

tort if that action would have been taken anyway." Hartman, 547 U.S. at 260.

Beyond speculative and conclusory allegations that plaintiffs' complaints and retention of counsel prompted the County to "step up" and "intensify" enforcement efforts, (Compl. ¶¶ 39-40), plaintiffs' allegations do not "provide a chronology of events from which an inference can be drawn that actions taken by the [defendants] were motivated by or substantially caused by the [plaintiffs'] exercise of their First Amendment rights." Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994). Plaintiffs first claim the County began unfairly singling them out for code violations in August 2012, following Sherwin's complaints. (Id. ¶ 19.) Plaintiffs then allege that, after they retained counsel in September 2012, defendants retaliated by threatening enforcement, (id. ¶ 23), culminating in the County's rejection of a purported settlement agreement in February 2013, (id. ¶¶ 34-41). Plaintiffs also allege they, along with counsel, met with the County "late in 2012," before that agreement was even made. (Id. ¶ 29.) Thus, it does not follow that plaintiffs' retention of counsel caused the County to reject the alleged February agreement, when plaintiffs had already retained counsel before even reaching the agreement.

Plaintiffs' allegations cannot support an inference that, but for their protected activity, defendants would not have threatened enforcement, because plaintiffs allege that defendants took the same actions before and after the protected activity. Plaintiffs essentially allege that their protected activities of retaining counsel and complaining about the unfair code

13

enforcement threats caused retaliation in the form of those same enforcement threats.  This is reflected in the County correspondence plaintiffs attached to the Complaint--the County asserts the same violations on September 6, 2012, before plaintiffs engaged in the protected activity, as it does in the allegedly retaliatory March 25, 2013, letters.  (Id. Exs. C-D.)  Thus, plaintiffs' allegations do not support an inference that, but for their retention of counsel, defendants' "action would have been taken anyway."  Hartman, 547 U.S. at 260.

Accordingly, because plaintiffs do not plausibly allege a causal connection between defendants' adverse action and plaintiffs' protected activity, the court must grant defendants' motion to dismiss plaintiffs' First Amendment retaliation claim.

    C.   Equal Protection Class of One

Plaintiffs also allege that the County violated their rights under the Fourteenth Amendment's Equal Protection Clause.  The Equal Protection Clause guarantees that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Supreme Court has recognized "class of one" claims under the Equal Protection Clause where, as here, plaintiffs do not assert that they belong to a protected class, but rather allege they have been unfairly singled out for unique treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (finding equal protection violation where village regularly required 15 foot-easements to connect to water supply but required 33-foot easement from plaintiff).  In order to bring a "class of one" claim, plaintiffs must allege that the County: "(1) intentionally

(2) treated [plaintiffs] differently than other similarly situated property owners, (3) without a rational basis." Gerhart v. Lake County, 637 F.3d 1013, 1022 (9th Cir. 2011).

The County does not contest that the treatment of plaintiffs was intentional.  Rather, the County contends that a class of one equal protection claim is improper in this case under the rule of Engquist v. Oregon Department of Agriculture, in which the Supreme Court recognized that "some forms of state action . . . by their nature involve discretionary decisionmaking" where "treating like individuals differently is an accepted consequence of the discretion granted."  553 U.S 591, 603 (2008).  Class of one claims are improper in such situations, according to the Court, because "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise."  Id.

Although Engquist limited the scope of its holding to the public employment context, courts have extended its rationale to other contexts in which a plaintiff is challenging a discretionary state action under a "class of one" theory.  See, e.g., Flowers v. City of Minneapolis, 558 F.3d 794, 799-800 (8th Cir. 2009) (concluding that "a police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion," and thus "they may not be attacked in a class-of-one equal protection claim").  Other courts have applied Engquist to the enforcement of land use regulations.  See Novotny v. Tripp County, S.D., 664 F.3d 1173, 1179 (8th Cir. 2011) (holding that the enforcement of a weed

abatement ordinance was discretionary and "not the result of arbitrary government classification," and thus not subject to a class of one challenge); Papas v. Leonard, No. 3:10-CV-00550-BR, 2012 WL 1445853, at *17 (D. Or. Apr. 25, 2012) (finding the plaintiffs' challenge to discretionary code enforcement decisions did not state cognizable class of one claim).

Here, as in Novotny, plaintiffs allege that they were subject to the unequal enforcement of county codes, a decision "based on a number of subjective factors within the purview of the county officials' discretionary authority." 664 F.3d at 1179. The County's decision to send plaintiffs enforcement letters resembles "a police officer's decisions regarding whom to investigate," Flowers, 558 F.3d at 799, or an employer's decision of whether or not to hire or fire an individual employee. Engquist, 553 U.S at 604-05, both of which cannot be subject to a "class of one" equal protection challenge. In light of this persuasive authority, it is questionable that plaintiffs' claim may proceed against the County under a "class of one" theory.

Even if plaintiffs survive this hurdle, their equal protection claim nonetheless fails to satisfy the requirement that the County must have treated plaintiffs differently than other similarly situated property owners. In alleging different treatment, "a plaintiff must demonstrate that 'the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high.'" Wilson v. City of Fresno, No. CVF 09-0887 LJO SMS, 2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009) (quoting Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)). To succeed, plaintiffs "must demonstrate

16

that they were treated differently than someone who is prima facie identical in all relevant respects." Id. (quoting Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)).

Plaintiffs acknowledge that their property was the subject of a complaint from a neighbor; indeed, they claim that Sherwin's complaint spurred the County's alleged mistreatment of them in the first place. (Compl. ¶ 18.) However, in claiming that the County ignored other similarly situated neighbors, plaintiffs do not allege that any these other properties were also subject to neighbor complaints about alleged violations. This alone differentiates plaintiffs from the other allegedly similarly situated property owners. See Jensen v. County of Sonoma, No. C-08-3440 JCS, 2010 WL 2330384, at *8 (N.D. Cal. June 4, 2010) aff'd, 444 F. App'x 156 (9th Cir. 2011) ("Plaintiffs have not, for example, produced evidence that the Defendant received complaints about other similar properties and took different action against those property owners.").

Further, plaintiffs' allegations do not support a claim that the other properties were "prima facie identical in all relevant aspects." Wilson, 2009 WL 3233879, at *7; see also Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 945 (9th Cir. 2004), overruled on other grounds by Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1025 (9th Cir. 2007) (requiring the plaintiff to show others similarly situated in terms of size, history of non-compliance, and level of activity on their land). Although plaintiffs list several other properties that they claim are in violation of various code provisions but were not subject to County enforcement, plaintiffs

17

do not allege that any of the properties in question were in violation of all of the same code provisions as plaintiffs.  (See Compl. Ex. A.)

For example, plaintiffs point out that Sherwin's property contains an unpermitted rental dwelling and debris pile yet has not been subject to County enforcement.  (Id.)  However, plaintiffs face enforcement not only for unpermitted buildings and excessive junk violations, but also unpermitted mobile home and sewage disposal, unpermitted occupied travel trailers, outdoor marijuana cultivation, and an unpermitted septic system.  (Id. Ex. B.)  Given the greater number of alleged violations on plaintiffs' property, a "rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." Wilson, 2009 WL 3233879, at *7 (quoting Neilson, 409 F.3d at 105).  Plaintiffs do not sufficiently allege that Sherwin's property is similarly situated to theirs.

Further, these differences in degree demonstrate a rational basis for defendants' actions.  State action "comports with equal protection if there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002) (quoting FCC v. Beach Commc'ns., Inc., 508 U.S. 307, 313 (1993)).  "While a complaint-driven system of enforcement could theoretically leave some unreported violations unabated, an efficient allocation of limited enforcement resources provides a rational basis for a

complaint-based system." Jensen, 444 F. App'x at 158.  That plaintiffs' property had more code violations and was the subject of citizen complaints gave defendants a rational basis for enforcing plaintiffs' violations before pursuing others.

Accordingly, because plaintiffs do not allege that the County treated them differently than other similarly situated property owners, and fail to allege a lack of rational basis for any disparate treatment, the court must grant defendants' motion to dismiss plaintiffs' equal protection claim.

D.  Conspiracy under 42 U.S.C. § 1985

Plaintiffs bring a claim of conspiracy under § 1985(3), alleging that defendants conspired to deprive plaintiffs of their rights secured by the First and Fourteenth Amendments.

To state a claim under § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).  A plaintiff must both identify a legally protected right and "demonstrate a deprivation of that right motivated 'by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. at 1536 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  The Ninth Circuit requires "either that the courts have designated the class in

question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985).

Here, plaintiffs allege that defendants violated plaintiffs' First and Fourteenth Amendment rights "in reaction and response to legitimate citizen complaints." (Compl. ¶ 50.) The Ninth Circuit, however, has specifically held that individuals who wish to petition the government are not a protected class for purposes of a § 1985 claim. Sever, 978 F.2d at 1536. Because plaintiffs do not allege they are members of a suspect or quasi-suspect class or other class specifically protected by Congress,[6] their claim under § 1985 fails. See Schultz, 759 F.2d at 718. Accordingly, the court will grant defendants' motion to dismiss plaintiffs' § 1985 claim.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date of this Order to file an amended complaint, if plaintiffs can do so consistent with this Order.

Dated:   November 13, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6] To this court's knowledge, no court has yet to hold that a class of one may constitute a protected class for purposes of alleging a § 1985(3) claim. See, e.g., Royal Oak Entm't, LLC v. City of Royal Oak, Michigan, 205 F. App'x 389, 399 (6th Cir. 2006); Norby v. City of Tombstone, No. CIV 07-232-TUC-CKJ, 2008 WL 5068835, at *8 (D. Ariz. Dec. 1, 2008).