UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| NORMAN KOLSTAD and SUSAN KOLSTAD, | CIV. NO. 2:13-01279 WBS EFB |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| COUNTY OF AMADOR, MARTHA SHERWIN, and DOES 1 through 50, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiffs Norman Kolstad and Susan Kolstad brought this action against the County of Amador (the "County") and Martha Shaver (erroneously named in the Complaint as Martha Sherwin) arising from a dispute over plaintiffs' use of their land.  Defendants now move to dismiss plaintiffs' First Amended Complaint ("FAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and for failure to state a claim upon which relief can be granted

1

1 | pursuant to Rule 12(b)(6).
2 | I.   Factual and Procedural Background
3 |      The factual background of this case is described in
4 | detail in the court's November 14, 2013, Order granting
5 | defendants' motion to dismiss.  See Kolstad v. County of Amador,
6 | Civ. No. 2:13-01279 WBS EFB, 2013 WL 6065315, at *1 (E.D. Cal.
7 | Nov. 14, 2013).  In short, plaintiffs claim that their "well-
8 | connected" neighbor Sherwin complained to the County regarding
9 | alleged code violations on plaintiffs' property, prompting a
10 | series of letters, inspections, and other efforts by the County
11 | to enforce compliance.  (FAC ¶¶ 5, 17-34 (Docket No. 18).)
12 | Plaintiffs allege that they never knowingly violated any County
13 | ordinance, rule, or statute and that many of their neighbors,
14 | including Sherwin, have engaged in similar conduct without facing
15 | enforcement measures from the County.  (Id. ¶¶ 23, 27.)
16 |      Between late 2012 and early 2013, plaintiffs retained
17 | counsel and attempted to negotiate a settlement with the County.
18 | (Id. ¶¶ 31-39.)  However, plaintiffs claim the County responded
19 | by rejecting the purported agreement, stepping up its enforcement
20 | efforts, and conducting a series of intrusive inspections of
21 | plaintiffs' property.  (Id. ¶¶ 42, 47.)  Plaintiffs also allege
22 | that the County imposed fines, denied their permit and building
23 | exemption applications, and recorded a notice of code violations
24 | on plaintiffs' title, which negatively impacted plaintiffs'
25 | property value.  (Id. ¶¶ 22, 36, 45-46, 51.)
26 |      Plaintiffs filed their Complaint on June 26, 2013,
27 | (Docket No. 1), and the court granted defendants' motion to
28 | dismiss for lack of subject matter jurisdiction and for failure

1  to state a claim on November 14, 2013.  <u>Kolstad</u>, 2013 WL 6065315,
2  at *9.  On December 2, 2013, plaintiffs filed the FAC, re-
3  alleging two claims under 42 U.S.C. § 1983 against the County: a
4  First Amendment retaliation claim and a Fourteenth Amendment
5  class of one equal protection claim.  (FAC ¶¶ 48-52.)  In
6  addition, plaintiffs now bring a common law trespass claim
7  against Sherwin.  (<u>Id.</u> ¶¶ 53-58.)  Defendants presently move to
8  dismiss the FAC as unripe under Rule 12(b)(1) and for failure to
9  state a claim under Rule 12(b)(6).
10 II.  <u>Plaintiffs' § 1983 Claims</u>
11         Defendants first move to dismiss plaintiffs' § 1983
12 claims as unripe under Rule 12(b)(1).  Once challenged, the
13 burden of establishing ripeness rests on the party asserting the
14 claim.  <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112,
15 1121 (9th Cir. 2009) (citing <u>Renne v. Geary</u>, 501 U.S. 312, 316
16 (1991)).  In support of a Rule 12(b)(1) motion, "the moving party
17 may submit 'affidavits or any other evidence properly before the
18 court.'"  <u>Id.</u> (quoting <u>St. Clair v. City of Chico</u>, 880 F.2d 199,
19 201 (9th Cir. 1989)).  The party opposing the motion must then
20 "present affidavits or any other evidence necessary to satisfy
21 its burden of establishing that the court, in fact, possesses
22 subject matter jurisdiction."  <u>Id.</u>
23         "[R]ipeness doctrine is drawn both from Article III
24 limitations on judicial power and from prudential reasons for
25 refusing to exercise jurisdiction."  <u>Reno v. Catholic Soc.</u>
26 <u>Servs., Inc.</u>, 509 U.S. 43, 57 n.18 (1993).  A claim is not ripe
27 if it involves "contingent future events that may not occur as
28 anticipated, or indeed may not occur at all."  <u>Thomas v. Union</u>

3

1  Carbide Agr. Prods. Co., 473 U.S. 568, 580-81 (1985).

2  "In the area of land use, the doctrine of ripeness is
3  intended to avoid premature adjudication or review of
4  administrative action."  Herrington v. County of Sonoma, 857 F.2d
5  567, 568 (9th Cir. 1988).  A constitutional challenge to land use
6  regulations is not ripe until there has been "a final decision by
7  the government which inflicts a concrete harm upon the plaintiff
8  landowner."[1]  Id. at 569.  This final decision requirement aims
9  to "provide [plaintiffs] with relief without expending further
10 court resources" and "enable [the court] to respect principles of
11 federalism which counsel in favor of resolving land disputes
12 locally."  Guatay, 670 F.3d at 979.  The Ninth Circuit treats the
13 final decision requirement in land use contexts "as a matter of
14 both Article III and prudential concern."  Id. at 980.

15 In its previous Order granting defendants' motion to
16 dismiss plaintiffs' Complaint, the court held that the final
17 decision requirement applies to plaintiffs' Constitutional claims
18 and that plaintiffs failed to allege that the County had made a
19 final determination regarding the use of plaintiffs' property.
20 Kolstad, 2013 WL 6065315, at *2-4.  Plaintiffs now do not contest
21 that the final decision requirement applies to their claims, but
22 argue that their FAC sufficiently alleges facts showing that a

---

[1] An exception to the final determination requirement exists when further attempts to obtain a decision would be futile.  See id. at 570.  Plaintiffs do not argue that the futility exception applies here.  Nor likely could they, as plaintiffs cannot claim futility simply because they are unable to pay for required permits.  See Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957, 981-82 (9th Cir. 2011) (rejecting plaintiff's contention that financial difficulties and inability to pay for permits warranted a finding of futility).

4

final decision regarding their property has occurred.  (Pls.' Opp'n at 2:1-11.)

Defendants have produced three declarations from County officials averring that there is no record of plaintiffs applying for an Agricultural Building Permit Exception, (Docket No. 22-4), and that there is no record of the County recording any notice of violation on plaintiffs' title, (Docket Nos. 22-2, 22-3).[2]  This evidence indicates that the County has not taken final action and places the burden on plaintiffs to produce evidence to satisfy their burden of establishing subject matter jurisdiction.  See Colwell, 558 F.3d at 1121 (noting that the party seeking to establish jurisdiction must proffer evidence in response to moving party's evidence in support of a Rule 12(b)(1) motion).

The evidence plaintiffs have produced in response does not support a finding that the County has made a final determination regarding plaintiffs' use of their property. First, plaintiffs offer a declaration from Norman Kolstad that he applied for but did not receive certain building permits that had been recommended by County officials.  (Kolstad Decl. ¶¶ 4-5 (Docket No. 25).)  Plaintiffs, however, do not offer any further evidence documenting this application and denial, and such vague allegations do not suffice to meet plaintiffs' burden to establish jurisdiction in the face of a 12(b)(1) motion.

Moreover, Norman Kolstad admits in the declaration that

---

[2] The County admits it recorded a notice of violation in May 2009, but contends that that it expunged that notice within a week.  (Van Vleck Decl. ¶¶ 7-8 (Docket No. 22-3).)  That notice also allegedly involved a different structure and parcel than those in the current action.  (Id.)

5

plaintiffs "took no action after receiving the letters" from the County threatening pending recordation in March 2013, (id. ¶ 6), even though those letters instructed plaintiffs to submit a plan for compliance, requested that plaintiffs apply for permits, and notified plaintiffs of the availability of agricultural exemptions, (FAC Ex. D (Docket No. 19-1)).  Standing alone, the letters do not indicate that the County made a final determination regarding the status of plaintiffs' property.  See Guatay, 670 F.3d at 981 (holding that cease and desist letters were not a final decision when plaintiff had not submitted a permit application).

Instead, Norman Kolstad's assertion that plaintiffs did not respond to the County's invitation to apply for further permits or exemptions demonstrates that plaintiffs failed to pursue available avenues to resolve the dispute.  This in turn suggests that the County's decision is not final and the dispute is not ripe.  See, e.g., Palazzolo v. Rhode Island, 533 U.S. 606, 620-21 (2001) (noting that ripeness "depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property").  Thus, even if the County had denied plaintiffs' previous applications--as plaintiffs claim in the declaration--plaintiffs' failure to pursue the avenues suggested by the County in March 2013 demonstrates they did not follow the "reasonable and necessary steps" required for their claims to ripen.

Second, an exhibit attached to plaintiffs' declaration flatly contradicts plaintiffs' assertion that "the County has

6

Case 2:13-cv-01279-WBS-EFB   Document 28   Filed 02/12/14   Page 6 of 10

plaintiffs "took no action after receiving the letters" from the County threatening pending recordation in March 2013, (id. ¶ 6), even though those letters instructed plaintiffs to submit a plan for compliance, requested that plaintiffs apply for permits, and notified plaintiffs of the availability of agricultural exemptions, (FAC Ex. D (Docket No. 19-1)).  Standing alone, the letters do not indicate that the County made a final determination regarding the status of plaintiffs' property.  See Guatay, 670 F.3d at 981 (holding that cease and desist letters were not a final decision when plaintiff had not submitted a permit application).

Instead, Norman Kolstad's assertion that plaintiffs did not respond to the County's invitation to apply for further permits or exemptions demonstrates that plaintiffs failed to pursue available avenues to resolve the dispute.  This in turn suggests that the County's decision is not final and the dispute is not ripe.  See, e.g., Palazzolo v. Rhode Island, 533 U.S. 606, 620-21 (2001) (noting that ripeness "depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property").  Thus, even if the County had denied plaintiffs' previous applications--as plaintiffs claim in the declaration--plaintiffs' failure to pursue the avenues suggested by the County in March 2013 demonstrates they did not follow the "reasonable and necessary steps" required for their claims to ripen.

Second, an exhibit attached to plaintiffs' declaration flatly contradicts plaintiffs' assertion that "the County has

6

1  already recorded numerous defects" on plaintiffs' title and
2  points to additional procedures available to plaintiffs that
3  negate the ripeness of their claims. (Pls.' Decl. ¶ 6.) The
4  exhibit is dated January 17, 2014, and states that the County
5  intends to record a notice of violations. (Pls.' Decl. Ex. A.)
6  This exhibit evinces that the County did not previously record a
7  notice of violations in 2013, as plaintiffs allege "upon
8  information and belief" took place. (FAC ¶ 46.)

9       Even more damaging to plaintiffs, the new notice
10 informs plaintiffs of their "right to a hearing before the Amador
11 County Hearing Board on the issue of whether or not violations
12 exist," provided that plaintiffs make a written request for such
13 a hearing.[3] (Pls.' Decl. Ex. A.) The availability of a hearing
14 to contest the violations plainly shows that the County has not
15 made a final determination regarding the use of plaintiffs'
16 property. See S. Pac. Transp. Co. v. City of Los Angeles, 922
17 F.2d 498, 503 (9th Cir. 1990) ("Those who have not followed
18 available routes of appeal cannot claim to have obtained a
19 'final' decision, particularly if they have foregone an
20 opportunity to bring their proposal before a decisionmaking body
21 with broad authority to grant different forms of relief . . .
22 ."). Plaintiffs' FAC seeks damages for "diminution of property
23 value," (FAC ¶ 51), presumably from the recording, but unless and
24 until the County hearing takes place to determine which, if any,
25 deficiencies will be recorded against plaintiffs' title, there is

---

[3] The letter states that plaintiffs must request a hearing within fifteen days of the date of the letter, or, February 1. There is no indication whether or not plaintiffs have made such a request.

7

no way for the court to determine these alleged damages.

"The Supreme Court has erected imposing barriers" in requiring a final action in order for a land use claim to be ripe "to guard against the federal courts becoming the Grand Mufti of local zoning boards." Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir. 1989).  Plaintiffs have a forum to challenge the County's enforcement measures.  That forum is the County's hearing, not this court.  Accordingly, because plaintiffs have failed to seek available avenues to determine the full allowable use of their property, their § 1983 claims are not ripe and the court must grant defendants' motion to dismiss these claims for lack of subject matter jurisdiction.[4]

III. Plaintiffs' California Trespass Claim

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or

---

[4] Because the court grants defendants' motion to dismiss plaintiffs' § 1983 claims as unripe under Rule 12(b)(1), the court need not reach the issues raised by defendants' Rule 12(b)(6) motion, including whether plaintiffs sufficiently alleged causation and adverse action to cure the defects to their First Amendment retaliation claim, and whether plaintiffs' "class of one" Equal Protection claim is a viable means to challenge what plaintiffs' counsel admitted was discretionary state action, see Papas v. Leonard, No. 3:10-CV-00550-BR, 2012 WL 1445853, at *17 (D. Or. Apr. 25, 2012), aff'd --- Fed. App'x ----, No. 12-35467, 2013 WL 5998378, at *1 (9th Cir. Nov. 13, 2013) ("Plaintiffs' allegedly disparate treatment was the result of discretionary decisionmaking, and the 'class-of-one' theory is not cognizable with regard to discretionary actions.").

1  decline to keep, them under the conditions set out in §
2  1367(c).").  Factors courts consider in deciding whether to
3  dismiss supplemental state claims include judicial economy,
4  convenience, fairness, and comity.  Imagineering, Inc. v. Kiewit
5  Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992), abrogated by Diaz
6  v. Gates, 420 F.3d 897, 900 (9th Cir. 2005).  "[I]n the usual
7  case in which federal law claims are eliminated before trial, the
8  balance of factors . . . will point toward declining to exercise
9  jurisdiction over the remaining state law claims."  Reynolds v.
10 County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996),
11 overruled on other grounds by Acri, 114 F.3d at 1000.
12            Having found that the court lacks subject matter
13 jurisdiction over plaintiffs' unripe § 1983 claims, only
14 plaintiffs' state law trespass claim remains.  None of the
15 parties raise any extraordinary or unusual circumstances
16 suggesting that the court should retain jurisdiction over
17 plaintiffs' state law claim in the absence of any federal claims.
18 The court will decline to exercise supplemental jurisdiction
19 under § 1367(c)(3) over plaintiffs' state law claim and,
20 accordingly, will grant defendants' motion to dismiss that claim
21 under Rule 12(b)(1).
22            IT IS THEREFORE ORDERED that defendants' motion to
23 dismiss be, and the same hereby is, GRANTED.
24            The Clerk of the Court is directed to enter a judgment
25 of dismissal in accordance with this Order and close the file.
26 If and when plaintiffs' claims finally ripen, they are free to
27 bring a new action in either state or federal court.
28

1  Dated:  February 12, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE